O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY LYNN C. NOVOA,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social Security,<br><br>   Defendant. | NO. CV 13-00219-MAN<br><br>MEMORANDUM OPINION<br>AND ORDER |

  On January 22, 2013, plaintiff filed a Complaint seeking review of the denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (ECF No. 4.) On October 8, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 13.) On September 26, 2013, the parties filed a Joint Stipulation, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No.

---

 [1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  *See* Fed. R. Civ. P. 25(d).

11.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On March 4, 2010, plaintiff filed applications for a period of disability and DIB. (Administrative Record ("A.R.") 11, 77, 78.) Plaintiff, who was born on March 21, 1963 (*id.* 19),[2] claims to have been disabled since April 30, 2009, due to hepatitis C, seizures, back problems, and mental health issues (*id.* 215). Plaintiff has past relevant work experience as a fast food worker, telephone operator, home attendant, and baker's helper. (*Id.* 18.)

After the Commissioner denied plaintiff's claim initially, and upon reconsideration, plaintiff requested a hearing. (A.R. 11.) On May 10, 2011, and on August 3, 2011, plaintiff, who was represented by counsel, appeared and testified at hearings before Administrative Law Judge Joel B. Martinez (the "ALJ"). (*Id.* 11, 20.) Vocational expert ("VE") Laurence Gordon and medical expert Steven B. Gerber, M.D. also testified. (*Id.* 11.) On August 26, 2011, the ALJ denied plaintiff's claim (*id.* 11-20), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (*id.* 1-3). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his August 26, 2011, decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through September 30, 2013, and that plaintiff has not engaged in substantial gainful activity since April 30, 2009, the alleged onset date of her disability. (A.R. 13.) The ALJ determined that plaintiff has the severe impairments of: hepatitis C; chronic obstructive pulmonary disease; history of seizure disorder; bipolar disorder, not otherwise

---

[2] On the alleged disability onset date, plaintiff was 46 years old, which is defined as a younger individual. (A.R. 19 (citing 20 C.F.R. §§ 404.1563, 416.963).)

specified; bipolar I disorder (rule out); adult antisocial behavior; borderline personality disorder; and antisocial personality disorder (rule out). (*Id.*) The ALJ concluded, however, that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* 14.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work, except that she: can perform postural activities occasionally; cannot be exposed to concentrated dust, fumes, or gases; cannot climb ladders, ropes, or scaffolds; cannot work around heights or hazards; is limited to simple work; and is limited to occasional contact with the public. (A.R. 14.) In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, finding her credibility to be "poor" (*id.* 18), as well as the medical evidence and opinions of record (*id.* 14). The ALJ "generally adopt[ed]" the opinions of the medical expert, Dr. Gerber, because he had access to the most complete medical records and his opinion is "in agreement with all other opinions in the record in that the claimant can perform at least light work." (*Id.* 16-17.) The ALJ also "generally adopt[ed]" the July 2010 opinions of the State agency reviewing psychiatrist, P. Balson, M.D., because Dr. Balson's opinions were consistent with the June 2010 assessment of Christopher Michael, Ph.D, the psychological consultative examiner, and with the June 2010 assessment of a Global Assessment of Functioning of 60[3] by the Arcadia Mental Health Center. (*Id.* 17 (citations omitted).)

Based on the testimony of the VE, the ALJ found that plaintiff is unable to perform her past relevant work. (A.R. 18.) Based on plaintiff's age, education,[4] work experience, and RFC, as well

---

[3] A GAF score between 51 and 60 is indicative of "Moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning (e.g, few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV-TR 34 (American Psychiatric Ass'n, 4th ed. 2000).

[4] The ALJ determined that plaintiff "has at least a high school education and is able to communicate in English." (A.R. 19 (citations omitted).)

3

as the testimony of the VE, the ALJ found that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including the jobs of production assembler (Dictionary of Occupational Titles ("DOT") No. 706.687-010), small products assembler II (DOT No. 739.687-030), and small products assembler I (DOT No. 706.684-022). (A.R. 19-20.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff asserts two sources of error.  First, plaintiff claims that the ALJ failed to properly consider the opinion of her treating physician, Dr. Chin Sho Choo, a staff psychiatrist with the Arcadia Mental Health Center.  (Joint Stip. at 3.)  Second, plaintiff contends that there is a DOT inconsistency in the ALJ's finding that she can perform the jobs of production assembler and small products assembler I and II.  (*Id.*)

**I.     The ALJ Failed To Provide Specific And Legitimate Reasons For Rejecting The Opinions Of Plaintiff's Treating Psychiatrist.**

**A.     Legal Standard**

An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. §§ 404.1527(c), 416.927(c).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes, 881 F.2d at 751. When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When, as here, it is contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*; *see also* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; *see* Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence). However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted).

### B. Analysis

Plaintiff contends that the ALJ failed to properly consider the March 16, 2011 "Medical Opinion Re: Ability to do Work-Related Activities (Mental)" form completed by her treating psychiatrist, Dr. Choo. (Joint Stip. at 3-8.) Specifically, she contends that the ALJ "does not indicate what evidence he gave very limited weight to in this opinion." (*Id.* at 5.) He also "did not mention any of Dr. Choo's specific findings" regarding plaintiff's mental abilities; for example,

that her mental impairments or treatment would cause her to be absent from work more than four days per month. (*Id.* (citing A.R. 464).) Nor did the ALJ state "what he accepted or rejected" in Dr. Choo's opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion. (*Id.* at 5-6.) Plaintiff also argues that the ALJ improperly rejected Dr. Choo's opinion based on a note in plaintiff's file, which was written by a licensed clinical social worker ("LCSW") employed by the same facility approximately two weeks after Dr. Choo's report, stating that plaintiff was relatively new to treatment at that facility and there was insufficient information to complete an SSI report. (*Id.* at 7-8.)

In the check-box style form she completed, Dr. Choo indicated that plaintiff is "Unable to meet competitive standards" in all of the categories listed, including: the ability to remember work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention for two hour segments; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday/workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest breaks; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers; respond appropriately to changes at work; deal with normal work stress; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; carry out detailed instructions; understand, remember, and carry out detailed instructions; set realistic goals; deal with stress of semiskilled and skilled work; interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places; and use public transportation. (A.R. 463-64.) Dr. Choo also indicated that plaintiff would have difficulty working at a regular job on a sustained basis, because she is depressed, has multiple physical problems, and has insomnia. (*Id.* 464.) Finally, Dr. Choo noted that plaintiff would be absent more than four days per month due to her impairments or treatment. (*Id.*)

The ALJ stated the following with respect to Dr. Choo's opinion:

> [Dr. Choo, a] staff psychiatrist at Arcadia Mental Health Center[,] completed a medical opinion regarding [plaintiff's] ability to do work-related activities (mental) in March 2011. The claimant was opined to be unable to meet competitive standards in all listed mental abilities due to depression, insomnia, and multiple physical problems.
>
> I generally adopt the DDS psychiatric opinion [of reviewing psychiatrist Dr. Balson] [A.R. 332-46], which is consistent with . . . psychological consultative examiner[, Dr. Michael's] assessment [A.R. 318-24] and the assessment of a Global Assessment of Functioning of 60 [by the Arcadia Mental Health Center at intake] [A.R. 366-70].
>
> I accord very limited weight to [Dr. Choo's opinion], which is not consistent with all other mental health opinions in the record. Although this check-the-box form was completed, another Arcadia Mental Health Center staff member stated that the claimant was relatively new to treatment and that there was insufficient information to complete an SSI report. Thus, the Arcadia Mental Health Center opinion is not consistent with the record as a whole.

(A.R. 17 (citations omitted).)

The Court finds that the ALJ's reasons for rejecting Dr. Choo's mental health opinions are neither specific nor legitimate.

First, the ALJ gave Dr. Choo's opinion about plaintiff's mental limitations less weight because it was controverted by consulting psychological examiner Dr. Michael and reviewing

psychiatrist Dr. Balson, who prepared their reports in June and July 2010 respectively, approximately eight months before Dr. Choo prepared her report. (A.R. 17.)

Dr. Michael saw plaintiff only once. In June 2010, he gave her a standard battery of psychological tests, and he did not review any "legal, educational, medical, or psychological" records. (A.R. 319.) He opined that plaintiff: could understand, remember, and carry out simple instructions; is unimpaired in her ability to make judgments on simple, work-related decisions; is likely to experience moderately severe difficulties in relating appropriately to the public, supervisors, and co-workers; and is mildly impaired in her ability to withstand stress and change, and moderately impaired if placed in a job requiring heavy interpersonal interaction, "because of extreme difficulties in getting along with other persons." (*Id.* 324.) This one-time examination of plaintiff, especially without review of any medical records, is of little probative value, and is not sufficient to overcome the opinions of the treating physician who saw plaintiff repeatedly after June 2010. *See* Reddick v. Chater, 157 F.3d 715, 727 (9th Cir. 1998).

Dr. Balson is a non-examining, non-treating psychiatrist who completed his review in July 2010, also without the benefit of Dr. Choo's treatment records, and relying at least in part on Dr. Michael's assessment. (*See* A.R. 342, 348.) Dr. Balson opined that plaintiff could "attain simple, unskilled work over the course of a 40 hour workweek. She can interact with others, handle stress, keep to a schedule and maintain attendance." (*Id.* 346.) The ALJ deemed this opinion to be "consistent with" Dr. Michael's assessment, notwithstanding Dr. Michael's conclusion that plaintiff would be *moderately impaired* in relating to others, and *mildly to moderately impaired* in her ability to withstand stress and change, depending on the amount of interpersonal interaction required in a job. (*Id.* 17.) Thus, at least with respect to social interactions and the ability to handle stress, the opinions of Dr. Michaels and Dr. Balson actually appear to be inconsistent.

The ALJ has must resolve conflicts in the medical evidence, and where reasonable, his interpretation should not be second-guessed. Andrews, 53 F.3d at 1039; Rollins v. Massanari, 261

F.3d 853, 857 (9th Cir. 2001). Here, however, the ALJ's reliance on the opinions of Dr. Michael and Dr. Balson to discount the opinion of treating psychiatrist Dr. Choo was not reasonable.

Nor was the ALJ's other stated reason for rejecting Dr. Choo's opinion specific and legitimate. The ALJ relied on the fact that a non-medical source at Dr. Choo's clinic opined, two weeks after Dr. Choo completed her assessment, that an SSI report could not be completed by Arcadia Mental Health Center, because there had not been a long treatment history.[5] (A.R. 466.) However, the record provides evidence of longitudinal and regular treatment of plaintiff by Dr. Choo. Plaintiff first visited the Arcadia Mental Health Center in June 2010; Dr. Choo prepared her report approximately ten months later, in March 2011. (*Id.* 463-64.) During that period, Dr. Choo saw plaintiff on August 6, 2010, September 28, 2010, November 16, 2010, January 12, 2011, and March 16, 2011. (*Id.* 465-80.) In fact, on November 2, 2010, plaintiff telephoned the clinic asking to see Dr. Choo "on an urgent basis," because she was having anxiety attacks and her medication was not working.[6] (*Id.* 472.) (*Id.*) On November 23, 2010, plaintiff attended a group therapy session at the clinic.[7] (*Id.* 470.) And, on March 16, 2011, a progress note in the file states: "spoke with Dr. Choo who agreed to fill out forms for client." (*Id.* 467.) Thus, given Dr. Choo's treatment history of plaintiff, the later April 2011 note written by the LCSW, which stated that plaintiff was "relatively new" and there was insufficient information "to complete SSI report at this time," was itself not consistent with the record and, therefore, not a sufficient reason to discount Dr. Choo's opinion.

---

[5] This note was written by an LCSW employed by Arcadia Mental Health Center. (A.R. 466.) An LCSW is not an "acceptable medical source" within the meaning of the regulations. 20 C.F.R. §§ 410.1513(a) & (d), 416.913(a) & (d). Nonetheless, information from "other sources" may be considered to assess an impairment's severity and affect on the ability to work. *Id.*; Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (the regulations permit the Commissioner to give "less weight" to opinions from "other sources"). Of course, this note does not constitute an opinion on plaintiff's impairments.

[6] Plaintiff reported during that call that she had begun interferon treatment and her symptoms had been "exacerbated as a result." (A.R. 472.) However, at the May 10, 2011, hearing, plaintiff testified she had *never* had interferon treatment. (*Id.* 57.)

[7] Although the note indicates that plaintiff was "to be seen in one week" (A.R. 470), there is no indication in the record whether she attended any more group therapy sessions.

10

Based on the foregoing, the Court finds that the reasons given by the ALJ to discount Dr. Choo's opinions, were not specific or legitimate and reversal and remand are appropriate.

## II. An Apparent DOT Inconsistency Exists Between Plaintiff's RFC And The Positions Suggested By The VE.

In plaintiff's RFC, and in the ALJ's hypothetical to the VE, the ALJ included a limitation to "no heights or hazards," without any further explanation. (A.R. 14, 38.) Plaintiff contends that this means she cannot "be exposed to hazards such as dangerous machinery," and each of the three jobs suggested by the VE requires her to "perform tasks involving hazards such as dangerous machinery," and if she is not careful abut using such tools, she or another worker could "become seriously injured . . . ." (Joint Stip. at 12-17.) The Commissioner argues that, as defined in the Social Security Rulings, "hazards" are "Not Present" for these positions. (*Id.* at 17-18).

Preliminarily, the Court notes that two of these three jobs – production assembler and small products assembler I – do not exist in significant numbers either regionally or nationally.[8] The VE testified, based on the ALJ's hypothetical, that there were about 40 available production assembler jobs locally and about 1,000 nationally. (A.R. 40.) He also testified that there were about 60 available small products assembler I jobs locally and 2,000 nationally. (*Id.*)

The Commissioner has the burden of demonstrating that the claimant can perform some work that exists in "significant numbers" in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) (citations omitted). In Beltran v. Astrue, the Ninth Circuit stated that where jobs are "'very rare' or generally unavailable to the claimant due to his limitations," an ALJ errs in finding that significant numbers of jobs exist. Beltran, 700 F.3d 386, 389 (9th Cir. 2010).

---

[8] Plaintiff did not raise this issue – maybe because the third job, small products assembler II, does exist in significant numbers at least nationally.

The Ninth Circuit determined that 135 jobs in the region in which claimant lived did not constitute "significant numbers" of jobs. *Id.* at 390 (citing Walker v. Matthews, 546 F.2d 814, 820 (9th Cir. 1976)). The court also found that if 135 jobs in one of the largest regions in the nation (Los Angeles) is not significant, then 1,680 jobs distributed over several regions nationally "cannot be a 'significant number,' either." *Id.* Based on Beltran, the Court finds that the ALJ erred in finding that the jobs of production assembler and small products assembler I exist in significant numbers in the national economy. (*See* A.R. 20).

Because these two positions are not available in significant numbers locally or nationally, only the small products assembler II job remains available to plaintiff unless, as plaintiff contends, her RFC would preclude her from being able to meet the requirements of that job.[9] (Joint Stip. at 14-15.) Specifically, because plaintiff's RFC provides that she cannot work around "hazards," she contends that she would be unable to perform the job's requirements (*id.* at 14), which include the following:

> Performs any combination of following duties to assemble parts of various materials, such as plastic, wood, metal, rubber, or paperboard, to produce small products, such as roller skates, toys, shoe lasts, musical instrument parts, or loudspeakers: Positions parts in specified relationship to each other, using hand, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand, using handtools, portable powered tools, or bench machines. Performs fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters.

---

[9] The VE testified that there were about 1,300 small products assembler II jobs locally and about 34,000 nationally. (A.R. 40.) The Ninth Circuit has recently found 25,000 national jobs to constitute a significant number. Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014). Accordingly, this Court finds 34,000 small products assembler II jobs in the national economy to be a "significant number."

(*Id.* (citing DOT No. 739.687-030 (emphasis added)).) Plaintiff asserts that the need to use portable power tools, bench machines, arbor presses, punch presses, and spot welding[10] would "require using dangerous machinery" in contravention of the "no hazards" limitation in her RFC and, if she were "not careful about using the power tools . . . , she or another employee could become seriously injured," getting fingers or hands caught in the equipment or "cut off" if she uses the equipment improperly. (*Id.* at 15.)

"The 'hazards' defined in the [DOT] . . . include: *moving mechanical parts of equipment, tools, or machinery*; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." Soc. Sec. Ruling 96-6p, 1996 WL 374185, at *9 (emphasis added). With respect to each of these categories of "hazard," including "moving mechanical parts," the DOT description for the small products assembler II job states "Not Present – Activity or condition does not exist." DOT No. 739.687-030. However, at least one court in this district has noted that courts appear to be divided on the question of whether an assembler of small parts[11] is a job that requires work around dangerous machinery. Lair v. Colvin, No. ED CV 12-932-SP, 2013 WL 1247708, at *4 (C.D. Cal. Mar. 25, 2013) (*comparing* Shannon v. Astrue, No. EDCV 10-359 AGR, 2011 WL 3420846, at *2-3 (C.D. Cal. Aug. 4, 2011) (assembler of small products I does not require work with dangerous equipment in contravention of the plaintiff's RFC) and Ballesteros v. Astrue, No. ED CV 10-301-PLA, 2011 WL 836656, at *3-4 (C.D. Cal. Mar. 8, 2011) (finding no apparent inherent conflict between the plaintiff's RFC that precludes work with motorized equipment and DOT description of the small products assembler II occupation because the occupation requires performance of "any combination" of the enumerated duties, not all of which entail operation of moving mechanical

---

[10] Plaintiff does not make the contention that tasks involving the use of hand tools would also be considered hazardous.

[11] For the analysis herein, the Court notes that small products assembler I and small products assembler II both involve very similar tasks. The small products assembler I is an assembly line type position and often involves group teamwork or loading and unloading machines, and the types and sizes of the products being assembled differ. *Compare* DOT No. 739.687-022 *with* DOT No. 739.687-030.

parts) *with* Jimenez v. Astrue, EDCV 11-1670 JC, 2012 WL 1067945, at *1, 4 (C.D. Cal. Mar. 29, 2012) (the requirements of the job of small products assembler I are inconsistent with the plaintiff's RFC that precludes work involving dangerous machinery)); *see also* Murphy v. Astrue, No. CV 09-8640-JEM, 2011 WL 124723, at *6 (C.D. Cal. Jan. 13, 2011) (ALJ erred by not obtaining explanation from the VE regarding the apparent conflict between the hypothetical claimant's inability to work around dangerous moving machinery, and the representative occupation of small products assembler II involving the use of hand tools, power tools, bench machines, and other machines).

In this case, even assuming, without deciding, that the use of any power tool or equipment other than a hand tool might have a "moving mechanical part" and constitute a "hazard," the Court notes that, although the job description states that a small products assembler II performs "any combination" of the tasks listed in the DOT, it does not state that a worker is required to perform all of them or to use all of the equipment listed. DOT No. 739.687-030. It is just as likely that the position would require the worker to use her hands or hand tools in performing the tasks of the job. *Id.*; *see also* Ballesteros, 2011 WL 836656, at *4. And, to the extent that plaintiff contends she cannot perform the small products assembler II job because the job requires her to be responsible for the safety of others, she does not provide any evidence to support her contention. Plaintiff merely speculates regarding both her responsibility for the use of certain "hazardous" equipment as part of the job and the potential injury to her putative co-workers due to her use of that equipment. (Joint Stip. at 15.) In contrast, the job description makes no mention of safety requirements or obligations to co-workers. DOT No. 739.687-030.

The Court finds this case complicated, however, by the fact that the ALJ did not expand upon his definition of "hazard," either in the RFC or in the hypothetical to the VE. (A.R. 14, 38-40.) Nor did the ALJ or plaintiff's counsel seek input from the VE with respect to his understanding of the hypothetical's limitation to "no hazards," especially with regard to the representative occupations. (*Id.* 38-41.) Thus, it is not known whether, and/or how, the VE took

that limitation into account in determining any erosion of the representative jobs in the local or national economies.

Moreover, when the VE's testimony is inconsistent with the requirements of the DOT, an ALJ is required to determine whether a conflict exists, and if so, "'whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT].'" Funches v. Astrue, No. 1:10cv0819 DLB, 2011 WL 1497068, at *6 (E.D. Cal. Apr. 19, 2011) (quoting Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007)). Here, the VE never testified as to whether his testimony was consistent with the DOT. (A.R. 38-40.) In Funches, while the ALJ had stated in the decision that the testimony of the VE was consistent with the DOT and concluded that the plaintiff could perform the other work, the court found that there was "no indication in either the testimony or the interrogatories . . . that the ALJ asked the VE whether a conflict existed." Funches, 2011 WL 1497068, at *6. Because the ALJ did not actually pose this question to the VE, the court found that it could not determine whether substantial evidence supported the ALJ's determination that the plaintiff could perform the representative work in the light of the RFC limitations. *Id.* The court remanded the case and specifically directed the ALJ to "obtain a reasonable explanation from the VE for the conflict between her testimony and the DOT." *Id.*

The same problem exists in this case. Although the ALJ states that he has "determined that the vocational expert's testimony is consistent with the information contained in the [DOT]" (A.R. 19), the transcript of the hearing shows that he never confirmed on the record that the testimony was indeed consistent (*see generally id.* 38-40.) As discussed above, the VE's testimony created an apparent conflict between plaintiff's RFC and the job descriptions of the representative occupations. Because the ALJ failed to ask the VE whether his testimony conflicted with the information in the DOT, the VE did not address the conflict created by his identification of jobs that the DOT states may require the use of power tools or other machinery, and plaintiff's RFC precluding "hazards."

15

Remand is thus warranted on this issue.

### III.  Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

As indicated above, the Court has found that reversible error occurred. Because outstanding issues must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.

On remand, the ALJ must give the opinion of Dr. Choo its deserved weight or give legally sufficient reasons for why weight is not accorded to that opinion.

On remand, the ALJ should also: clarify what is meant by the RFC limitation to "no hazards" should the ALJ again determine such a limitation is warranted; seek clarification from the VE regarding the jobs plaintiff is able to perform that exist in significant numbers in the local or national economy in light of her RFC; determine whether the VE's testimony is consistent with the DOT; and seek an explanation of any apparent inconsistency between the VE's testimony and the DOT's description of the representative occupations in relation to plaintiff's RFC.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: August 6, 2014

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE